UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
PECOS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CAUSE NO. PE-20-MJ-968 |
| | § | |
| CARLOS EDUARDO RUIZ-GARCIA | § | |

## MEMORANDUM OF BOND DECISION

The Defendant, Carlos Eduardo Ruiz-Garcia (Ruiz-Garcia), is a citizen of Mexico without documentation to live in the United States legally. On July 18, 2020, he was arrested for transporting six illegal aliens. (Doc. 1). The Government filed a motion to detain. (Doc. 2). On July 28, 2020, the Court held a detention hearing. (Doc. 15). The case agent testified to the strength of the Government's case against Ruiz-Garcia. Ruiz-Garcia called his fiancé, Mireya Martinez, in support of bond. He also filed a memorandum in support of bond with attached affidavits. (Doc. 14). Following the presentation of the evidence, the Court denied the Government's motion to detain (Text Order), and set the following conditions of release: $40,000 bond with 10% down, two sureties (approved by Pretrial Services), and a curfew from 7 p.m. to 6 a.m. (Doc 17). The Court stayed the execution of the bond to permit the Government to appeal to the District Court. (Doc. 18). The Government appealed. (Doc. 20).

1. **The Bail Reform Act (BRA) as Applied to Alien-Defendants.**

"In our society liberty is the norm, and detention prior to trial or without a trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The BRA provides that a "judicial officer *shall* order the pretrial release" of a person charged with a federal crime, "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the

1

community." 18 U.S.C. 3142(b) (emphasis added). By using the command "shall", the BRA intends that a judicial officer set conditions of release absent evidence of non-appearance or danger. *See United States v. Graves*, 908 F.3d 137, 141 (5th Cir. 2019), *as revised* (Nov. 27, 2018) (citing *Valdez v. Cockrell*, 274 F.3d 941, 950 (5th Cir. 2001)). As one District Court noted, "the presumption is release absent a demonstration that the defendant is likely to flee or is a danger to the community." *United States v. Espinoza-Ochoa*, 371 F. Supp. 3d 1018, 1020 (M.D. Ala. 2019) (citation omitted).

The BRA expressly contemplates pretrial release for aliens. *See United States v. Adomako*, 150 F. Supp. 2d 1302, 1304 (M.D. Fla. 2001). Section 3142(d) of the BRA provides that if a judicial officer determines that an alien "may flee or pose a danger to any other person or the community, then the judicial officer shall order the temporary detention of such person in order for the attorney for the government to notify the appropriate official of the Immigration and Naturalization Service." *United States v. Trujillo-Alvarez*, 900 F. Supp. 2d 1167, 1174 (D. Or. 2012) (citing 18 U.S.C. § 3142(d)) (quotation marks and emphasis omitted). This temporary detention may not exceed 10 days. 18 U.S.C. § 3142(d). "If the [Immigration] official fails or declines to take such person into custody during that period, such person shall be treated in accordance with the other provisions of this section, notwithstanding the applicability of other provisions of law governing release pending trial or deportation or exclusion proceedings." *Id.*

This is the only section in the BRA that addresses aliens specifically. And, aside from § 3142(d), the BRA requires citizens and non-citizens be treated alike.

"Thus, if an alien-defendant is *not* a flight risk or a danger, then the usual provisions of the BRA apply." *United States v. Baltazar-Sebastian*, 429 F. Supp. 3d 293, 303 (S.D. Miss. 2019).

**2. The BRA as Applied to Ruiz-Garcia.**

2

The Government must show by a preponderance of the evidence that Ruiz-Garcia is a risk of flight and by clear and convincing evidence that he is a danger to any person or to the community. *See United States v. Townsend,* 897 F.2d 989, 993 (9th Cir. 1990). The factors the court must consider in making a bond decision are set forth in § 4132(g) and listed below.

<u>Nature and circumstances of the offense charged</u>. This is an alien smuggling case. In the early morning hours of July 17, 2020, a Texas Game Warden stopped a silver GMC Yukon on IH-10 near Sheffield, Texas. The vehicle was traveling 5 miles per hour over the posted speed limit and it did not have a front license plate. After the Game Warden activated his overhead lights, the vehicle pulled over without incident. The driver of the vehicle was Ruiz-Garcia. There were six passengers, all of whom were illegal aliens. Ruiz-Garcia was taken into custody and subsequently confessed to transporting the aliens. No guns, drugs or minor children were involved in this incident.

<u>The weight of the evidence</u>. The weight of the evidence against Ruiz-Garcia is quite strong. In addition to Ruiz-Garcia's confession, several of the illegal aliens identified him as the driver. Also, the codefendant told the case agent that Ruiz-Garcia had transported illegal aliens on two pervious occasions. The weight of the evidence against the defendant, however, is the least important of the various factor. *United States v. Townsend,* 897 F.2d at 994.

<u>The defendant's personal characteristics</u>. Ruiz-Garcia is a citizen of Mexico and does not possess documentation to be in the United States legally. He has lived in the United States since 2002, primarily in Fort Worth. He is engaged to Mireya Martinez, a U.S. citizen, and they have been together for almost one year. Ruiz-Garcia is living with Ms. Martinez in a house she has recently purchased in the Fort Worth area. He has three U.S. citizen children from a prior marriage. Although the children live with their mother in Houston, Ruiz-Garcia sees the children

on a regular basis and pays child and medical care support. According to the testimony, he pays approximately $990 in monthly support. The divorce decree indicates he is in arrears in his child support payments and that a judgment has been taken against him for the arrearage. He is making monthly payment toward the arrearage.

Ruiz-Garcia has presented the court with numerous affidavits from family members, friends, and former employers, all who attest to his good character. One employer refers to Ruiz-Garcia as a "benefit to our society", while another describes him as trustworthy, honorable and reliable. His fiancé testified how Ruiz-Garcia is attentive to his children and their special needs – one has a skin condition and another is partially blind. Ruiz-Garcia's siblings also live in the Dallas/Fort Worth area, and they have lived there for a substantial length of time. His mother and father still live in Mexico, but Ruiz-Garcia has not traveled there for a number of years. He talks to his mother by telephone regularly. Ruiz-Garcia's deep roots in the Fort Worth area is a significant factor in a bond decision. *See, e.g., Truong Dinh Hung v. United States*, 439 U.S. 1326 (1978) (Brennan, J., in chambers) (ordering bail pending appeal because defendant "resided continuously in this country . . . [for 13 years], and has extensive ties in the community.").

Prior criminal history. Ruiz-Garcia does not have any criminal history.

### 3. The Government believes Ruiz-Garcia is a flight risk.

The Government believes Ruiz-Garcia is a flight risk because of his ties to Mexico, which the Government characterizes as "substantial." It's true that his mother and father still live there, but the majority of his family reside in the Dallas/Fort Worth area. The Government did not contest that Ruiz-Garcia has lived in the United States for approximately 22 years, that he has three U.S. citizen children, that he is engaged to a U.S. citizen, that he does not travel to Mexico on a regular basis (in fact, there is no evidence that Ruiz-Garcia has traveled to Mexico in the

4

last several years, although he does have a valid passport), and that he does not have a criminal history.

The Government also points out that Ruiz-Garcia does not have any status to live in the United States legally, and, if convicted, he will more likely than not be deported or removed. "That the defendant is an alien may be taken into account, but alienage does not by itself 'tip the balance either for or against detention.'" *Townsend*, 897 F.2d at 994 (citation omitted). Given that the BRA affords a presumption of innocence to a defendant in pretrial matters, the Court does not believe Ruiz-Garcia's alienage is a dispositive consideration. 18 U.S.C.§ 3142(j).

4. **The Court's Finding.**

The Court finds that based on the testimony and evidence presented at the detention hearing, the BRA requires it to set the least restrictive conditions of release that will assure Ruiz-Garcia's appearance in court and the safety of the community. 18 U.S.C. § 3142(c)(1)(B). Thus, the Court sets Ruiz-Garcia's bond at $40,000, a 10% cash deposit, two sureties acceptable to Pretrial Services, and a curfew from 6 o'clock p.m. to 7 o'clock a.m. The other standard conditions of release are set forth in the Condition of Release. (Doc. 17).

SIGNED this 3rd day of August, 2020.

David Fannin
U.S. Magistrate Judge